Association of Community Organizations for Reform Now (ACORN), Petitioner *v.* Commonwealth of Pennsylvania, Commission on Charitable Organizations, Respondent.

Judge BLATT filed a dissenting opinion which was substantially as follows:

1. A neighborhood improvement organization which is part of a national organization seeking neighborhood improvements which are designed to promote the happiness and prosperity of others is a charitable organization required to register by the Solicitation of Charitable Funds Act, Act of August 9, 1963, P.L. 628, before soliciting funds, and the public interest dictates that a charitable organization should not be permitted to avoid reporting and registration requirements by adopting projects beneficial solely to itself. [540-1]

Argued November 18, 1981, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Carole A. Wood,* with her *Louis S. Rulli,* for petitioner.

*Cynthia M. Williams,* Assistant Attorney General, with her *David F. Phifer,* General Counsel, and *Harvey Bartle, III,* Attorney General, for respondent.

OPINION BY JUDGE MENCER, March 31, 1982:

The Association of Community Organizations for Reform Now (ACORN) has appealed from an order of the Commission on Charitable Organizations (Commission) which enjoined ACORN from further solicitation activities for failing to register with the Department of State as a charitable organization. We reverse.

Section 3(a) of the Solicitation of Charitable Funds Act (Act), Act of August 9, 1963, P.L. 628, *as amended,* 10 P.S. §160-3(a), provides, in pertinent part, as follows:

(a) Every charitable organization which intends to solicit contributions within this Commonwealth, or have funds solicited on its behalf, shall, prior to any solicitation, file a registration statement with the department upon forms prescribed by the commission, which shall be good for one full year and which shall be refiled in the next and each following year in which such charitable organization is engaged in solicitation activities.

Section 2(1) of the Act, 10 P.S. §160-2(1), defines a "charitable organization" as "a person which is or holds itself out to be a benevolent, educational, philanthropic, humane, patriotic, religious or eleemosynary organization or any person which solicits or obtains contributions solicited from the public for charitable purposes after the effective date of this act."

When ACORN failed to file an annual registration statement, a hearing was held before the Commission on April 15, 1980, to determine whether ACORN is a charitable organization subject to the Act's registration requirements. The Commission made the following relevant findings of fact:

7. The purpose of ACORN is to enhance the quality of neighborhoods.

8. ACORN states that it has won countless neighborhood improvements throughout Philadelphia, including: better housing conditions, more police protection, vacant lot clean-ups, more recreation facilities, improved traffic safety and public transportation, increased city support for community health and day care facilities.

9. Testimony was presnted that an example of an ACORN project involved the organizing of a South Philadelphia group to persuade officials by blocking traffic to have Snyder Avenue repaved.

10. Organizers collect membership fees from residents in selected low and moderate income neighborhoods consisting of approximately one thousand to fifteen hundred families.

. . . .

12. Canvassers solicit money from the general public, asking for contributions to financially support ACORN.

. . . .

16. Testimony was presented that canvassers, in soliciting contributions, do not say that ACORN is a charity or that it is tax exempt.

From these findings, the Commission concluded that ACORN is a charitable organization as defined in Section 2(1) of the Act. We must disagree with this conclusion.

As the record and findings of fact demonstrate, ACORN is essentially a community-based organization, advocating legislative, economic, and social reforms which will benefit its members. The testimony indicates that, once a neighborhood group is formed, the members define the issues that they wish to pursue to improve their neighborhood.

In *Commonwealth v. Frantz Advertising, Inc.*, 23 Pa. Commonwealth Ct. 526, 533, 353 A.2d 492, 496 (1976), we stated as follows:

It has long been established under the Common law that 'the word "charitable," in a legal sense, includes every gift for a general public use, to be applied . . . for the benefit of an indefinite num-

ber of persons, and designed to benefit them from an educational, religious, moral, physical, or social standpoint. In its broadest meaning it is understood "to refer to something done or given for the benefit of our fellows or the public." ' Voegetly Estate, 396 Pa. 90, 93, 151 A.2d 593, 595 (1959).

We concluded in *Frantz Advertising* that, since the Fraternal Order of Police was essentially a labor organization existing solely for the benefit of its membership, it was not a charitable organization within the meaning of the Act. ACORN likewise exists primarily for the benefit of its members, and whatever benfit accrue to nonmembers are incidental and not controlling.

Furthermore, the Act only applies to charitable organizations which Section 2(1) defines as "benevolent, educational, philanthropic, humane, patriotic, religious or eleemosynary" organizations. In interpreting the applicability of this section, we must construe these words according to their common and approved usage. Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903. Webster's Third New International Dictionary defines the words that could pertain to ACORN as follows, in relevant part:

> benevolent: marked by a kindly disposition to promote the happiness and prosperity of others or by generosity in and pleasure at doing good works.

*Id.* at 204.

> philanthropic: characterized by philanthropy: benevolent, humanitarian.

*Id.* at 1697.

> humane: marked by compassion, sympathy or consideration for other human beings or animals.

*Id.* at 1100.

eleemosynary: of or relating to charity: charitable or philanthropic.

*Id.* at 733.

We cannot say that any of these definitions accurately describes ACORN's activities. These definitions would seem to encompass organizations with broader and less self-interested objectives than those sought by ACORN, *i.e.,* an organization that promotes the well-being of an indefinite number of persons, thus adding to the good of the community as a whole. Indeed, it is doubtful that ACORN's goals are universally viewed as beneficial to society as a whole. We can readily envision segments of society that would not agree with ACORN's opposition to the construction of a high-speed rail line connecting central Philadelphia to the airport or with ACORN's opposition to a proposed water rate increase on the ground that it favored suburban residents at the expense of city residents.

While we understand the Commission's concern that ACORN's solicitation of funds from the general public will not be subject to the safeguards of the Act if it is not viewed as a charity, we nevertheless must conclude that ACORN is not a charitable organization within the meaning of the Act.

ORDER

AND Now, this 31st day of March, 1982, the order of the Commission on Charitable Organizations, dated June 30, 1981, directing the Association of Community Organizations for Reform Now to cease and desist from all solicitation activities within Pennsylvania, is hereby reversed.

Judge PALLADINO did not participate in the decision in this case.

DISSENTING OPINION BY JUDGE BLATT:

I regret that I must respectfully dissent.

The majority opinion states that "ACORN likewise exists primarily for the benefit of its members, and whatever benefits accrue to nonmembers are incidental and not controlling." In so stating, it seems to me to usurp the Commission's role as the fact-finder. The Commission, of course, found, quite to the contrary, in its finding number 7 that "[t]he purpose of ACORN is to enhance the quality of neighborhoods."

The Commission's finding here, along with its other findings noted in the majority opinion, seems clearly to hold that ACORN has won many neighborhood improvements throughout Philadelphia including housing conditions, police protection, vacant lot cleanups, traffic safety, etc., and finding of fact number 6 (not quoted in the opinion) states that "Pennsylvania ACORN is part of a national organization, incorporated in Arkansas as a non-profit corporation and registered as a foreign non-profit corporation in Pennsylvania". All of this persuades me that ACORN is, under Section 2(1) of the Act, 10 P.S. §160-2(1), at the very least, "benevolent", which the proposed majority opinion defines as: "marked by a kindly disposition to promote the happiness and prosperity of others or by generosity in and pleasure at doing good works."

I believe that to accept ACORN's self-serving statements that it acts solely for its own benefit, and to override the Commission's findings of fact that, *inter alia*, ACORN's "purpose . . . is to enhance the quality of neighborhoods . . . ," *especially* without a finding by this Court under the appropriate standard of factual review that there was either insufficient or insubstantial evidence upon which such factual determination was based, or that such findings were made with a capricious disregard of competent evidence, would set a very bad precedent.

Additionally, I am concerned that any registered organization, even one clearly "charitable," might be tempted to adopt a few practices or projects which are solely beneficial to itself merely in order to avoid the Act's continuing reporting requirements, which would clearly be adverse to the public interest.

I would, therefore, affirm the order of the Commission.